UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LOVE'S TRAVEL STOPS &  
COUNTRY STORES, INC., ET AL.

CIVIL ACTION

VERSUS

LOVEPREET SINGH, ET AL.

NO. 18-00842-BAJ-EWD

RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 38)** filed by Defendant Daimler Trucks ("Daimler"). No opposition was filed. For the reasons stated herein, Daimler's Motion is **GRANTED**.

I.  FACTS

Plaintiffs, Love's Travel Stops & Country Stores, Inc. and Love's of Louisiana LLC, seek recovery for an August 1, 2017 fire that occurred at a Love's service station in Port Allen, Louisiana against Daimler[1] under the Louisiana Products Liability Act ("LPLA"). (Doc 1-2, Doc 28, Doc. 38). Plaintiffs claim that the vehicle, a tractor and trailer combination, caught fire while parked next to a set of diesel fuel pumps. (Doc. 28, at ¶ 7). The fire caused property damage to Plaintiffs' facility, as well as expenses incurred from loss of fuel and clean up. *Id.* at ¶ 8.

Daimler is the manufacturer of the tractor, which is a 2015 Freightliner Cascadia (the "Freightliner"). (Doc. 38-1 at p. 2). Daimler manufactured the

---

[1] While Plaintiffs additionally filed suit against five other defendants—the driver of the vehicle, the owner of the vehicle, the manufacturer of the trailer, the insurer of the vehicle, and the inspector of the vehicle—these claims were dismissed and therefore are not considered. (*See* Doc. 50).

1

Freightliner, bearing the VIN #3AKJGLD54FSFK4976, in 2014. Daimler has not had possession of the vehicle since July 5, 2014, when it was delivered for shipment. (Doc. 38–2 at ¶ 5). Plaintiffs allege that the Freightliner tractor manufactured by Daimler was unreasonably dangerous in design, construction, or composition, that adequate warnings as to these defects were not provided, and that the product failed to conform to an express warranty.

Plaintiffs were required to identify expert witnesses by November 30, 2019, and to produce expert reports by December 31, 2019. Plaintiffs have not produced any such reports. Daimler now moves for summary judgment.

## II.  LEGAL STANDARD

The Court will enter summary judgment in Daimler's favor if Daimler shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Court cannot grant summary judgment just because Daimler's motion is unopposed; Daimler must point to the absence of a material factual dispute. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995). In deciding if it has done so, the Court views facts and draws reasonable inferences in Plaintiffs' favor. *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018). However, because Plaintiffs failed to file a response, Daimler's properly supported assertions of fact are undisputed. FED. R. CIV. P. 56(e)(2). The moving party may prevail on summary judgment by pointing out the absence of evidence supporting the nonmoving party's case. *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1328 (5th Cir. 1996).

## III. DISCUSSION

### A. Louisiana Products Liability Act

Daimler properly removed this case under 28 U.S.C. § 1332, and as such the substantive law of Louisiana governs this dispute. Plaintiffs sued for recovery under the LPLA. To recover under the LPLA, a plaintiff must establish four elements: "(1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) (citing La. R.S. § 9:2800.54(A)).

A product is "unreasonably dangerous" under the LPLA where: (1) the product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;[2] (2) the product is unreasonably dangerous in design as provided in R.S. 9:2800.56; (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided as required by R.S. 9:2800.57, or; (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58. *Id.* (citing La. R.S. § 9:2800.54(B)).

---

[2] A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer. La. R.S. § 9:2800.55

3

Daimler asserts that Plaintiffs are unable to prove two of the required elements, as it contends it was not the Freightliner, but rather an unrelated refrigeration unit not manufactured by the Daimler that caused the fire. Daimler additionally argues that Plaintiffs are neither able to prove that the Freightliner was unreasonably dangerous at the time it left its control, nor that the Freightliner's condition was thus the cause of the fire and damaged Plaintiffs' service station.

Plaintiffs have failed to present evidence that the Freightliner was defective, or that the defect was the cause of the fire. West Baton Rouge Parish Deputy Fire Chief Robby Smith's investigation of the fire determined that, while the Freightliner was involved in the ignition of the fire, the fire actually started within the refrigeration unit on the front of the trailer, which was not manufactured by Daimler. (Doc. 38-6, at p. 15). Deputy Chief Smith wrote a report on the day of the fire in his capacity as the responding officer in charge for the West Baton Rouge Fire Department. *Id.* at p. 14. The report describes what he saw as he participated in the coordination, extinguishment, and suppression of the fire, as well as the subsequent investigation of the fire. *Id.* The report states that several witnesses, including the driver of the truck, the passenger of the truck, and other truck drivers at the service station, all saw the fire originate from the refrigeration unit. *Id.* at p. 15.

Daimler is only responsible for defects arising from the Freightliner in this case. Daimler did not manufacture, supply, distribute, or sell the refrigeration unit on the front of the trailer. (Doc. 38-1, at p. 9; Doc. 1-2, at ¶ 12–13). Daimler has no relationship with the manufacturer of the trailer, nor does it have a relationship with

4

the individuals who drove the trailer to Plaintiffs' service station. (Doc. 38-2, at ¶ 7–8). Plaintiffs have not provided any evidence that the Freightliner manufactured by Daimler was defective.

Plaintiffs have also not provided any evidence to show that the alleged defect in Daimler's product caused any damage to them. Under the LPLA, a plaintiff has the burden of proving that a defect caused the plaintiff's damage. *Weber v. Fidelity & Casualty Insurance Co. of N.Y.*, 259 La. 599, 250 So.2d 754 (1971). While the Court has recognized that "expert testimony is not required in every LPLA case" to establish causation, "courts consistently require expert testimony in products liability cases, even when the products in question are in common use." *Stewart v. Capital Safety USA*, 867 F.3d 517, 521 (5th Cir. 2017). For expert testimony not to be required in a products liability case, "the product itself, or at least the. . . feature in question, must be relatively uncomplicated, and the implications. . . [must be] such that a layman could readily grasp them." *Id.* (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 184 (5th Cir. 1990) (citations omitted), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc)).

Plaintiffs have not designated any expert that can connect the fire to any defect that existed when the Freightliner left Daimler's control. Nor, for that matter, have they provided any other evidence that connects the fire to the Freightliner. This case does not involve products or features which are relatively uncomplicated, and it would likely be beyond the expertise of the average juror to evaluate the facts. To meet their burden, Plaintiffs would likely require expert testimony in the fields of fire origin

forensics, engineering, physics, as well as over-the-road truck maintenance practices and procedures. The time the Court allotted to Plaintiffs to designate such experts and furnish their reports has long-since expired. Plaintiffs have failed to meet their burden to establish a genuine dispute of material fact that a defect in Daimler's Freightliner caused their damages. As such, their LPLA claims fail.

### B. Res Ipsa Loquitur

In addition to their LPLA claim, Plaintiffs also allege that the fire was one which "does not occur absent the negligence of one or more of the parties having care custody and control of the truck and trailer", and called on the court to apply the doctrine of *res ipsa loquitur*. (Doc. 1-2, at ¶ 16). Normally in cases of negligence, "mere proof of an 'accident'. . . does not raise any presumption of negligence," however there are certain classes of cases where "the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed by the party charged with care. . . the thing that happened [] would not have happened." *Sweeney v. Erving*, 228 U.S. 233, 238 (1913). In these cases the court applies the principle of *res ipsa loquitur*, meaning "the thing speaks for itself." *Id.*

For *res ipsa loquitur* to apply, a plaintiff must establish three elements: (1) the facts must indicate that the plaintiff's injuries would not have occurred in the absence of negligence; (2) the plaintiff must establish that the defendant's negligence falls within the scope of his duty to the plaintiff, and; (3) the evidence should sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides the defendant in causing the accident. *Lawson v. Mitsubishi Motor Sales of*

6

*Am., Inc.*, 938 So.2d 35, 49 (La. 2006). If a plaintiff meets the burden with respect to these three elements, the burden shifts to the defendant manufacturer to prove that the product was not defective when it left its control. *Id.* In addition, "[t]he general Louisiana rule is that *res ipsa loquitur* applies only when the instrumentality causing the accident is within the control of the defendants." *Winans v. Rockwell Intern. Corp.*, 705 F.2d 1449, 1455 (5th. Cir. 1983) (citations omitted).

Here, because the evidence does not exclude all other probable explanations for the service station fire, and because the Freightliner was not in Daimler's exclusive control at the time of the fire, the Court does not reach the burden-shifting step of the analysis. Plaintiffs have not offered proof that the Freightliner was the cause of the fire and that Daimler breached its duty to Plaintiffs. On the contrary, the evidence indicates that the fire started from the refrigeration unit attached to the Freightliner and not the Freightliner itself. (*See* Doc. 38–9; 38–6). The fact that Plaintiffs have not demonstrated that all other individuals are free from fault in this action means *res ipsa loquitur* is inapplicable.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Daimler's **Motion for Summary (Doc. 38)** is **GRANTED**. A final judgment as to Plaintiffs' claims against Defendant Daimler Trucks shall be issued.

Baton Rouge, Louisiana, this 12th day of November, 2020

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA